# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter Garrison, | Case No. 16-cv-2866 (WMW/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota Department of Revenue of the State of Minnesota, Linda Craigie, *individually and in her capacity as Supervisor for the Out-of-State East Unit*, Pam Evans, *individually and in her capacity as Director of the Sales and Use Tax Division,* and Kathy Zieminski, *individually and in her capacity as Director of Human Resources*, | |
| Defendants. | |

Peter Garrison, P.O. Box 13579, 2000 County Rd B2W, Roseville, MN 55113, *pro se*

Julianna Francis Irene Passe and Leah M. Tabbert, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for Minnesota Department of Revenue of the State of Minnesota, Linda Craigie, Pam Evans, and Kathy Zieminski

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 127]. The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. *See* (Order of Referral [Doc. No. 11].) For the reasons stated below, the Court recommends that Defendants' motion be granted.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff Peter Garrison "is a 30-year employee for the Minnesota Department of Revenue [('MDOR')]."  (Second Am. Compl. ¶ 7; *see also* Aff. of Kathy Zieminski in Supp. of Defs.' Mot. for Summ. J., "Zieminski Aff." [Doc. No. 144 ¶ 5].)  For most of his career, Garrison worked outside the state of Minnesota as a part of MDOR's Out-of-State unit.  *See* (Second Am. Compl. ¶¶ 7, 12; Zieminski Aff. ¶ 5.)  Garrison's allegations relate to a three-year period from about 2012 until early 2015, during which Defendant Craigie was Garrison's supervisor.  *See generally* (*id*; *see also id.* ¶ 7.)  Specifically, Garrison alleges he was mistreated while he worked under Craigie, including being suspended multiple times without cause, and that this mistreatment ultimately culminated in Garrison receiving a demotion with a commensurate reduction in salary.  *See, e.g.*, (Second Am. Compl. ¶¶ 50–109, 121–25, 166–79, 222, 235, 238.)  In response to his treatment, Garrison filed a charge with the U.S. Equal Employment Opportunity Commission, alleging race discrimination.  *See* (Second Am. Compl. ¶ 238; Zieminski Aff ¶ 10; Zieminski Aff Ex. 10 [Doc. No. 144-10].)

---

[1]  As is discussed in more detail below, the operative pleading is Garrison's Second Amended Complaint [Doc. Nos. 89, 89-1].   The Second Amended Complaint is voluminous, spanning more than 130 pages and 366 paragraphs.  The Court has reviewed the operative pleading and the documents filed in connection with the instant motion.  The Court refers to the Second Amended Complaint where appropriate to consideration of specific issues, but cites extensively to documents associated with an employee grievance initiated on Garrison's behalf by his union for much of the factual discussion that is key to the instant motion.  *See* (Zieminski Aff. Ex. 17 [Doc. No. 144-16].)

Garrison's union, the Minnesota Association of Professional Employees ('MAPE') grieved his one-day suspension, demotion, and five-day suspension. (Zieminski Aff. ¶ 11.) MAPE also represented Garrison during the grievance process. (*Id.*) The first meeting was held on February 18, 2015, and was attended by Garrison and two MAPE representatives: Kathy Fodness and Nicholas Frey. (*Id.*) During the meeting, Garrison "requested rescission of the disciplinary action and reassignment to a new supervisor." (*Id.*) At the conclusion of the meeting, MDOR "presented a settlement proposal to Fodness for her to discuss with [Garrison]. Included as a proposed term was [Garrison's] relocation to Minnesota" to work in the department's Arden Hills office. (*Id.*) This aspect of the proposal was included because individuals at MDOR were aware that Garrison was applying for assignments in Minnesota "and because such a reassignment would result in [Garrison's] assignment to a new supervisor." (*Id.*)

Garrison requested revisions to the proposed settlement agreement on two occasions. *See* (*id.* ¶¶ 12, 16.) He provided the first set of proposed revisions on February 24, 2015. (*Id.* ¶ 12; *see also* Zieminski Aff. Ex. 11 [Doc. No. 144-11].) The department responded with a revised proposed settlement agreement on March 4, 2015. *See* (Zieminski Aff. ¶13; *see also* Zieminski Aff. Ex. 12 [Doc. No. 144-12].) Prior to submitting his second set of revisions, Garrison requested additional time because he "wanted [a] relative of his who was an attorney to review the settlement proposal over the weekend." (Zieminski Aff. ¶ 15; *see also* Zieminski Aff. Ex. 13 [Doc. No. 144-13].)

Garrison proffered additional changes to the settlement agreement on March 24, 2015. (Zieminski Aff. ¶ 6; *see also* Zieminski Aff. Ex. 14 [Doc. No. 145].) On March 25,

2015, MDOR responded that it would agree to certain modifications included in Garrison's most recent round of requested changes, but observed that it did not consider the changes to the agreement material, and also reminded Garrison that pursuant to the language of the agreement, the agreement was scheduled to expire the next day, on March 26, 2015. (Zieminski Aff. ¶ 17; *see also* Zieminski Aff. Ex. 15 [Doc. No. 144-14].)  As a result, MDOR requested that if Garrison intended to execute the agreement, he do so on or before March 26, 2015.  *See* (Zieminski Aff. Ex. 15 at 1, 2.)  As part of this correspondence, MDOR provided Garrison with another revised proposed settlement agreement.  *See* (*id.* at 4–11.)  Approximately 20 minutes later, Garrison transmitted executed signature pages of the agreement.  *See* (Zieminski Aff. ¶ 18; Zieminski Aff. Ex. 16 [Doc. No. 144-15 at 3–4].) Don Halub, the Executive Director of MAPE, and Fodness subsequently signed the settlement agreement on behalf of MAPE.  (Zieminski Aff. ¶ 19; *see also* Zieminski Aff. Ex. 17 [Doc. No. 144-16].)  Zieminski executed the settlement agreement on behalf of MDOR.  *See* (Zieminski Aff. ¶ 19; *see also* Zieminski Aff. Ex. 17.)

MDOR states that it complied with its obligations under the agreement.  *See* (Zieminski Aff. ¶¶ 20–26.)  Garrison does not dispute this, but alleges that the actions taken by MDOR in compliance with the agreement in themselves constituted a retaliatory act against him for having brought the race discrimination claims.  *See, e.g.*, (Second Am. Compl. ¶ 238, 346–50.)

### B.    Procedural Background

On August 24, 2016, Garrison, proceeding *pro se*, filed a complaint against the State of Minnesota and several individuals alleging, *inter alia,* race and age discrimination,

hostile work environment, denial of equal protection on the basis of his race, denial of his right to due process, and violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973, all in connection with his employment by MDOR.  (Compl. [Doc. No. 1].)

Defendants responded by filing a motion [Doc. No. 5] to dismiss all of Garrison's claims.  That motion was fully briefed and oral argument was held on December 14, 2016.  *See* (Dec. 14, 2016 Minute Entry [Doc. No. 21].)  That same day, Garrison attempted to file an amended complaint [Doc. No. 22], but the Court ordered it stricken because Garrison was not entitled to amend his complaint as a matter of right, and he had not filed a motion seeking leave to amend his complaint nor had he complied with Local Rule 15.1.  *See* (Jan. 26, 2017, Order [Doc. No. 30].)

On March 14, 2017, Garrison filed a motion [Doc. No. 31] for leave to file a second amended complaint.  The proposed second amended complaint deleted several causes of action and did not add any new causes of action or new parties, but did add a number of factual allegations in support of Garrison's claims against the named Defendants.  *See* (Ex. B [Doc. No. 32] (proposed second amended complaint).)  Defendants filed a memorandum in opposition to the motion [Doc. No. 39] and Garrison filed a reply memorandum [Doc. No. 44].  Then, inexplicably and without leave of Court, Garrison filed a second set of papers, including a motion, memorandum, and numerous exhibits in apparent further support of his motion to file a second amended complaint.  *See* ([Doc. Nos. 45–65].)  The Court ordered those documents stricken because the motion, memorandum, and proposed second amended complaint were duplicative of the content of

the motion and proposed second amended complaint already under consideration by the Court. *See* (Apr. 25, 2017 Order [Doc. No. 71].) Further, although the *exhibits* filed in support of the second motion had not previously been filed, the Court noted that they were filed without leave of court, briefing was complete on the pending motion, and in any event the exhibits were not necessary to decide whether Garrison should be permitted to amend his complaint. (*Id.*) Garrison filed a third motion for leave to file the same proposed second amended complaint [Doc. No. 73] on May 9, 2017, and the Court again ordered that motion stricken because it too was duplicative of the motion already under advisement. *See* (May 15, 2017 Order [Doc. No. 74].)

On May 15, 2017, the Court issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted in part and denied in part, and recommending that Garrison's Motion to File a Second Amended Complaint be granted in part and denied in part. *See* (May 15, 2017, R&R [Doc. No. 75].) That Report and Recommendation was adopted as modified by the Honorable Wilhelmina Wright on August 7, 2017. *See* (Aug. 7, 2017, Order [Doc. No. 79].) As a result of that order, the only claims remaining in the case are: (1) Garrison's Section 1983 claim against Defendant Linda Craigie in her individual capacity for alleged violation of his right to equal protection; (2) his Title VII race discrimination and hostile work environment claims against the State of Minnesota and against Craigie in her official capacity, but only to the extent the alleged discrimination occurred on or after November 9, 2013; and (3) his retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a) against defendants Craigie and Evans in their official capacities. *See generally* (*id.*; Dec. 18, 2017, Order [Doc. No. 106].)

6

On October 12, 2018, Defendants filed a motion to compel Garrison to serve the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1), and to answer the interrogatories and requests for production of documents that they had served and to which he had never responded. [Doc. No. 115.] Garrison did not respond to the motion, nor did he appear at the hearing held on October 30, 2018. Ruling from the bench, the Court granted the motion to compel in nearly all respects, ordering Garrison to provide the required disclosures, answers, and documents on or before November 19, 2018. *See* (Oct. 30, 2018, Minute Entry [Doc. No. 122].) The minute entry detailing its order was mailed to Garrison by the Clerk's Office. *See* (Mail Returned as Undeliverable [Doc. No. 162].) The Court also ordered Defendants' counsel to immediately send a copy of the minute entry to Garrison by email. *See* (Oct. 30, 2018 Minute Entry at 7.)

On November 8, 2018, Defendants filed a motion for summary judgment on all claims. *See generally* (Mot. for Summ. J. [Doc. No. 127].) Garrison filed no written response to that motion. He did, however, appear at the hearing on December 28, 2018. *See* (Dec. 28, 2018, Minute Entry [Doc. No. 165].) The Court allowed him to present oral argument, but admonished him that it would not accept evidence or written materials that had not been timely filed prior to the hearing as required by Local Rule 7.1(c), and it held each party to 20-25 minutes of oral argument. *See generally* (*id.* (listing total hearing time of 54 minutes).) Defendants' counsel represented at the hearing, and Garrison did not dispute, that despite the Court's October 30, 2018, order on Defendants' motion to compel, Garrison had never served initial disclosures or responses to Defendants' discovery requests.

7

Notwithstanding Garrison's failure to provide written discovery, Defendants were not without sworn evidence, including excerpts from Garrison's deposition,[2] and documents to support their Motion for Summary Judgment. *See generally* (Doc. Nos. 133, 134-1 to 134-17, 136, 138, 140, 142, 144, 144-1 to 144-24, 145, 147, 147-1 to 147-3, 148, 148-1.) Included in these exhibits is the agreement signed by Garrison on March 26, 2015, which contains language releasing "[MDOR] and the State of Minnesota, and all of their past and present agents, representatives, officers, and employees, in their official and individual capacities, from any and all claims" for any conduct that occurred before the agreement was executed. *See* (Zieminski Aff. Ex. 17 at 6–8.) During the hearing, Garrison argued that he signed the settlement agreement under duress, but he did not point to anything in the record to substantiate that claim.

On January 29, 2019, one month after the hearing on Defendants' motion, Garrison filed a letter ("January 2019 Letter") [Doc. No. 170], accompanied by a large stack of documents, asking the Court to reopen the hearing on Defendants' Motion for Summary Judgment so that he could have adequate time to present his case and so that the Court could consider the accompanying documents and arguments in opposition to the motion. *See generally* (Jan. 2019 Letter.) Garrison further requested the assistance of an attorney through the Federal Bar Association's Pro Se Project. *See* (*id.* at 1,7.) Finding no circumstances that would excuse Garrison's failure to follow the applicable procedural rules, the Court denied the request for a rehearing, noted that it had previously referred

---

[2] At the Court's request, Defendants filed the entire transcript of Plaintiff's deposition after the hearing. *See* (Dep. Tr. [Doc. No. 166].)

Garrison to the Pro Se Project and denying the request to refer him again, and ordered that the materials filed in support of the request be stricken from the record. *See generally* (Feb. 6, 2019, Order [Doc. No. 173].)

## II.    DISCUSSION

### A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In other words, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted).  "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988).  The court views the evidence and makes all reasonable inferences in favor of the nonmoving party. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005).

To support its argument, the moving party must cite to record materials or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).

**B.      Analysis**

Defendants argue summary judgment is appropriate on several grounds.  First, they argue the settlement agreement Garrison signed in late March 2015 disposes of all of Garrison's claims as a matter of law.  Second, they argue that even in the absence of the settlement agreement, Garrison failed to adduce competent evidence in response to the motion for summary judgment that would raise a genuine issue of material fact in support of any of his remaining claims.

> **1.      Defendants Are Entitled to Summary Judgment Because Plaintiff Released His Claims Against Them in the March 2015 Settlement Agreement**

Garrison did not dispute at the hearing that the settlement agreement contains the release language cited by Defendants, nor that on its face, it would release all but one of his remaining claims.[3]  Instead, he argued that the agreement is not valid and the release not enforceable against him.  A settlement agreement contemplating the release of legal claims is reviewed as a contract under Minnesota law.  *See State ex rel. Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn. 2006).  As the party challenging contract formation, Garrison must provide evidence of his allegations.  *See, e.g.*, *Sorensen v. Coast-to-Coast Stores (Cent. Org.), Inc.*, 353 N.W.2d 666, 669–70 (Minn. Ct. App. 1984), *review denied* (Minn. Nov. 7, 1984); *see also Van Hee v. Haala*, No. A09-1456, 2010 WL 1192031, at *2–5 (Minn. Ct. App. Mar. 30, 2010) (discussing duress, unconscionability, fraud, and

---

[3]  Plaintiff acknowledged at the hearing that the only conduct encompassed within his remaining claims that did not predate the settlement agreement was the implementation of the terms of the settlement agreement itself, including his reassignment to Minnesota and the corresponding reduction in salary, which he argues were in retaliation for his complaints of discrimination.  The Court addresses that argument in Section II.B.2.d below.

inequitable defenses in terms of what must be proven). His failure to do so here is arguably

dispositive of the issue. "The law encourages the settlement of disputes" and "generally

presumes an agreement settling a dispute is valid." *Sorensen*, 353 N.W.2d at 669 (citing

*Couillard v. Charles T. Miller Hospital, Inc.*, 92 N.W.2d 96 (1958)). Because a release is

presumed valid, "[a] release is [only] invalid if the party executed the release under

circumstances showing the release was not intended or if the party did not receive sufficient

consideration." *Id.* Garrison has provided no admissible evidence that undermines the

validity of the contract or in any way overcomes the presumption of validity. *Cf. id.*

Further, as discussed below, the factual record before the Court clearly demonstrates that

Garrison entered the agreement, intentionally, willingly, and for sufficient and negotiated

consideration.

### a.    Intent to Release Claims

Minnesota courts look to several factors when considering whether a party intended

to release its claims. *See, e.g.*, *Sorensen*, 353 N.W.2d at 669–70 (citing cases). The first

factor is the nature of the language used in the release. *Id.* at 669. "The more complicated,

confusing or misleading the language the more weight a court will give to a claim of no

intent." *Id.* Here, the language is quite clear as to nature of the release. Specifically, the

agreement states that Garrison,

> *fully and completely releases* the Minnesota Department of Revenue and the
> State of Minnesota, and all their past and present agents, representatives,
> officers, and employees in their *official and individual capacities*, from any
> and all claims, differences, demands, rights, and causes of action with respect
> to all of the above-described matters in dispute between the parties, which the
> Grievant has or may have, whether known or unknown, arising in law or
> equity, including all claims arising on or before the date the Grievant executes

11

this Agreement, and all such claims, differences, demands, rights and causes
of action are fully released satisfied and settled. *This release specifically
includes, without limitation, all claims arising out of or relating to Grievant's
employment with Employer.* Grievant fully understands that this a full, final
and complete release of all claims against the Minnesota Department of
Revenue and the State of Minnesota, including, but not limited to, all claims
under Title VII of the Civil Rights Act of 1964, as amended, the Family
Medical Leave Act, the Americans with Disabilities Act, the Age
Discrimination in Employment Act, and any other local, state or federal laws,
rules, regulations, ordinances or executive orders relating to illegal
discrimination in the workplace.

(Zieminski Aff. Ex. 17 at 6–7 (emphasis added).) There is nothing confusing or

complicated with this language. Specifically, "[t]he operative words are not mired in legal

jargon nor hidden in fine print." *Sorensen*, 353 N.W.2d at 669. Garrison knew by signing

the release that the conduct forming the basis of the grievance—which is the same conduct

at issue in this lawsuit, *see, e.g.*, (Second Am. Compl. ¶ 7)—are "fully released satisfied and

settled" and that he was agreeing to "a full, final and complete release of all claims against"

Defendants. *See* (Zieminski Aff. Ex. 17 at 6.) Moreover, Garrison proposed revisions to

the agreement on two occasions, and thus was demonstrably capable of seeking clarification

or revision of the language therein if he did not understand it.

Another factor to consider is the lack of representation before or at the time of

execution. *Sorensen*, 353 N.W.2d at 669. During the negotiation of the settlement

agreement, Garrison was represented by MAPE. *See, e.g.*, (Zieminski Aff. ¶ 11.) For

example, Garrison's first revised settlement agreement was sent by Fodness, one of

Garrison's MAPE representatives. (Zieminski Aff. ¶¶ 11–12.) Furthermore, Garrison

requested (and received) additional time to consider the agreement so that a Minnesota-

based attorney could review the terms of the agreement, and he subsequently proposed additional revisions. (Zieminski Aff. ¶ 15; *see also* Zieminski Aff. Ex. 13.) Arguably, the only time in which the absence of representation can be reasonably inferred is the 20 minutes between the time Defendants presented Garrison with a revised proposed settlement agreement and Garrison executed it. But, regardless, the absence of representation—to the extent it occurred—is not significant; "the release language is simple" and Garrison is not an unsophisticated person. *Cf. Sorensen*, 353 N.W.2d at 669. Furthermore, his MAPE representatives also executed the agreement after Garrison signed it. (Zieminski Aff. ¶ 19; *see also* Zieminski Aff. Ex. 17 at 5.) Thus, there was a final opportunity for them to raise any concerns before they signed the agreement.

The third and fourth factors identified in *Sorensen* pertain to whether there was fraud or wrongful concealment that contributed to the plaintiff's mistake. *Sorensen*, 353 N.W.2d at 670. But Garrison has not even argued, let alone offered evidence, that Defendants misled him with respect to what he was signing. On the contrary, the evidence of record demonstrates that the nature of the proposed release was clear from the start. Indeed, the heading on the first proposed settlement agreement was "Settlement and Release Between State of Minnesota, Department of Revenue and Minnesota Association of Professional Employees" and that heading remained unchanged throughout the negotiation. *Compare* (Zieminski Aff. Ex. 11 at 1, *with* Zieminski Aff. Ex. 17 at 1.) Furthermore, the agreement always contemplated release of claims by Garrison against Defendants. *See, e.g.*, (Zieminski Aff. Ex. 11 at 1–2; Zieminski Aff. Ex. 14 at 6–7, 11–14; Zieminski Aff. Ex. 17 at 1–2, 6–8.) Consequently, there is nothing to suggest that Defendant obtained Garrison's

assent to the terms of the agreement through a misrepresentation or a "bait and switch" of any kind.

Another factor that the Court should consider is whether Defendant obtained Garrison's assent under duress. *See Sorensen*, 353 N.W.2d at 670. "Duress caused by economic coercion may show the absence of an intent to release claims." *Id.* (citing *Wallner v. Schmitz*, 57 N.W.2d 821 (Minn. 1953)). But economic hardship is insufficient to establish duress in the absence of wrongful or unlawful coercive acts. *See Sorensen*, 353 N.W.2d at 670. Garrison must establish "that he involuntarily accepted the terms of the release, that the circumstances allowed only that alternative, and that the other party created the compelling circumstances through coercive acts." *Id.* (citing *Oskey Gasoline & Oil Co. v. Continental Oil Co.*, 534 F.2d 1281, 1286 (8th Cir. 1976)).

Garrison asserted in conclusory fashion in his complaint and again during the hearing that the settlement agreement was a product of duress. *See* (Second Am. Compl. ¶ 238 (alleging Plaintiff was "forced" to execute the agreement or risk losing his job).) But in the context of a motion for summary judgment, conclusory statements will not satisfy Garrison's burden to establish genuine issues of material fact. *See, e.g.*, *Anderson*, 477 U.S. at 256–57; *Heisler v. Metro. Council*, 339 F.3d 622, 628 (8th Cir. 2003); *see also Wallner*, 57 N.W.2d at 824 ("Facts must be set forth which, under the law, constitute duress, from which the court or jury may find that the release was not given voluntarily, and, also, so that the opposing party may be apprised of what facts the complaining party alleges occurred which constitute compulsion or duress."). Here, the record is devoid of evidence that Defendants employed wrongful or unlawful coercive acts in order to secure Garrison's

14

agreement to the settlement and release, and in the absence of such evidence, Garrison cannot sustain a claim of coercion. *See, e.g.*, *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn.1985) (stating duress can be established "when [an] agreement is coerced by physical force or unlawful threats"); *Wise v. Midtown Motors*, 42 N.W.2d 404, 407 (stating "to do that which he has a right to do, . . . or one which he in good faith believes to be lawful, does not constitute duress") (Minn. 1950).  On the contrary, Defendants were attempting to address an employment dispute on the basis of their established procedure. *See, e.g.*, (Second Am. Compl. ¶ 236 (alleging the grievance was conducted "[i]n accordance with MAPE union guidelines"); Zieminski Aff. Ex. 17 at 1, 6; Zieminski Aff. ¶¶ 7–8; Auger Aff. [Doc. No. 147 ¶¶ 3–8]; Craige Aff. [Doc. No. 133 ¶¶ 5–31]; Doc. Nos. 134-8, 134-10, 134–14, 134-16, 138, 140, 144-2, 144-3, 144-4, 144-17, 144-21, 144-22 (Documents pertaining to Defendants concerns with respect to Garrison's work performance and penalties that were levied against Garrison on those grounds).)

Furthermore, the record does not support a claim that Garrison was pressured into signing the agreement without an opportunity to consider his alternatives.  The record shows that he was given about a month to consider the terms of the settlement agreement, he submitted two revisions, and some of his revisions were accepted.  *See, e.g.*, (Zieminski Aff. ¶¶ 11–16; Zieminski Aff. Exs. 11–15.)  Certainly, there is no admissible evidence that he was told or led to believe that he had to release his claims or he would lose his job.  That after a month had passed he was told he needed to make a decision and either accept the revised agreement or it would expire does not constitute duress.

15

Finally, the Court finds it compelling that even after the agreement was signed by all parties, Garrison still had the benefit of a fifteen-day rescission period. *See* (Zieminski Aff. Ex. 17 at 7).[4] If during that fifteen-day period Garrison had decided he did not wish to accept the agreement and release Defendants, he could have withdrawn the release in writing. *See* (*id.*) Garrison did not do so. Garrison's failure to rescind belies duress and further manifested his intent to release Defendants. *See, e.g.*, *Capital Warehouse Co. v. McGill-Warner-Farnham Co.*, 149 N.W.2d 31, 35 (Minn. 1967) (stating courts must look to the "acts and conduct of the parties" when considering their true intent). As a result, the record puts to rest any argument that Garrison did not intend to release his claims against Defendants.

### b. Consideration

As the Honorable Patrick Schiltz, United States District Judge, noted in *Chappell v. Butterfield-Odin School District No. 836*, 673 F. Supp. 2d 818 (D. Minn. 2009), it is not clear "[w]hether the Court is supposed to weigh the adequacy of the consideration," or merely consider whether "something of value has passed between the parties." 673 F. Supp. 2d at 830, 831 (second quotation marks omitted). Here, however, the Court need not determine which standard controls because both are met.

---

[4] With respect to rescission, the agreement states in pertinent part:

> By signing this Settlement and Release, the [G]rievant waives and releases all rights and remedies provided under Minnesota Statutes Chapter 363A, the Minnesota Human Rights Act. This document constitutes written notice to the Grievant of the right to rescind this waiver or release within 15 calendar days of its execution by all parties. To be effective, the rescission must be placed in writing and be delivered, by hand or by mail, to the Department of Revenue Human Resource Management Director within the 15 calendar day period.

Under the arguably more exacting standard of whether sufficient (or adequate) consideration existed, Plaintiff must receive something for "which . . . [he] had no previous right." *See Schmitt-Norton Ford, Inc. v. Ford Motor Co.*, 524 F. Supp. 1099, 1103–04 (D. Minn. 1981) (MacLaughlin, J.).  Here, as part of the negotiated settlement, Garrison received:  (1) a transfer to a new supervisor; (2) the opportunity to have his suspensions reduced in severity on the basis of satisfactory job performance; (3) Defendants' promise to evaluate his position "for possible reallocation to Revenue Tax Specialist Principal"; and (4) adjustment of "the date of reassignment to Arden Hills by two (2) weeks."  Each of these was something to which he was not entitled to but for the terms of the agreement.  *See* (Zieminski Aff. ¶ 11; Zieminski Aff. Ex. 16 at 2, 4; Zieminski Aff. Ex. 17 at 2.)

Further, under more traditional notions of consideration, Garrison considered both obtaining a new supervisor and a reduction in his suspensions to be something of value; these were important—if not foundational—aspects of the agreement.  *See, e.g.*, (Zieminski Aff. ¶ 11; Zieminski Aff Ex. 15 at 2; Garrison Dep. Tr. at 149:9-10 (Garrison "asked to be switched to a different supervisor" as part of the settlement agreement); *id.* at 150:11-12 ("Yes, I did submit a proposal that I work for the other supervisor."); *id.* at 155:15-17 (one of Garrison's most important concerns was "put[ting him] under the other supervisor").  In addition, the agreement itself contains acknowledgements that it is supported by sufficient or adequate consideration.  *See, e.g.*, (Zieminski Aff. Ex. 17 at 6, 8.)

The Court concludes, therefore, that Garrison has failed to raise any genuine issue of material fact as to the validity and enforceability of the release in the agreement he signed.  It is well settled that a valid release prevents re-litigating claims that are the subject of the

release.  *See, e.g.*, *Nanassay v. Health East/St. John's Hosp.*, 205 F.3d 1346 (8th Cir. 2000); *Pilon v. Univ. of Minn.*, 710 F.2d 466, 468 (8th Cir. 1983).  Here, the agreement explicitly releases all actions by all remaining Defendants up through the date of the agreement, and therefore releases all remaining claims in the Amended Complaint, *see* (Am. Compl. ¶¶ 7, 235–38; Zieminski Aff. Ex. 17), with one purported exception:  Garrison's contention Defendants' implementation of the terms of the settlement agreement was in itself retaliation.  *See* (Am. Compl. ¶¶ 346–51).  Thus, at the very least, Defendants are entitled on the basis of the release to summary judgment on all claims but that one.  *See Pilon*, 710 F.2d at 468.  Furthermore, as will be discussed *infra*, summary judgment should also be granted as to any purported claim that Defendants retaliated against Garrison by implementing the terms of the settlement agreement.  *See* Section II.B.2.d.

> **2.      Defendants Are Entitled to Summary Judgment Because Plaintiff Has Not Introduced Evidence That Creates a Genuine Issue of Material Fact as to Any of His Remaining Claims.**

Even if the settlement agreement did not foreclose the instant lawsuit, summary judgment in favor of Defendants would be appropriate on all of his remaining claims because he has failed to introduce evidence that would create a genuine issue of material fact as to any of them.

> **a.      Race Discrimination**

"Absent direct evidence of discrimination, [Plaintiff's] Title VII . . . claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  *Oniyai v. St. Cloud State*

*Univ.*, 684 F.3d 711, 716 (8th Cir. 2012). Here, Garrison has failed to introduce direct evidence of discrimination. Thus, under the burden-shifting framework,

> [Plaintiff] must first establish a prima facie case of discrimination . . . . To do so, he must show: (1) he is a member of a protected class; (2) he was meeting [his employer's] legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently.

*Id.* (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011)). Only after Garrison makes this prima facie showing must Defendants "articulate a legitimate, nondiscriminatory reason" for his treatment. *Id.* If Defendants provide nondiscriminatory reasons for their conduct, the burden shifts again, and Garrison must demonstrate that these reasons are merely pretext for the underlying discrimination. *Id.*

It is not disputed that Garrison, an African American, is a member of a protected class. But Garrison proffered no admissible evidence to support a prima facie showing that at the time of the treatment of which he complains, he was meeting his employer's legitimate job expectations or that similarly situated employees outside the protected class were treated differently. For example, he asserts that he received numerous employee commendations and stellar job reviews. *See, e.g.*, (Am. Compl. ¶¶ 25–45.) But the positive commendations and reviews he describes were received years before the period at issue in the lawsuit. *See* (*id.*) Thus, while Garrison may well have been meeting or even exceeding the expectations of his supervisors at that time, those past reviews and commendations do not establish that he was meeting the legitimate expectations of his current supervisor during the particular years at issue in this case.

Not only has Garrison failed to provide admissible evidence that he was meeting his supervisor's legitimate expectations during the relevant time period, but Defendants provided numerous performance reviews that show he was *not* meeting expectations during that time. *See, e.g.*, (Craigie Aff. Exs. 4–21 [Doc. Nos. 134-3 to 134-15, 134-17, 138, 140, 142].) There is no doubt Garrison believes Craigie's expectations and priorities were incorrectly placed, and that he believes his prior supervisors had a more accurate view of his abilities and of the most effective use of his time, but it is not for the Court to second-guess such determinations in the absence of evidence that they were driven by discriminatory intent. *See Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1080 (8th Cir. 2010) ("Absent some evidence of retaliatory motive, we will not second-guess an employer's judgment of an employee's performance."). The Court also notes that at least two of Garrison's previous supervisors also found Garrison's performance to be below expectations, but Garrison does not allege that these poor performance reviews evinced discriminatory animus. *See, e.g.*, (Zieminski Aff. Exs. 3, 18, 22–23 [Doc. Nos. 144-3, 144-17, 144-21, 144-22]; Dep. Tr. at 58–59:20); *see also Harrison v. Office of Architect of the Capitol*, 964 F. Supp. 2d 81, 100 (D.D.C. 2013) (concluding that "no reasonable jury could conclude" the defendant's conduct "was a pretext for discrimination" and finding it persuasive that a different "supervisor—who the Plaintiff does not allege had any retaliatory motive—reported many of the same issues with the Plaintiff's performance").

Furthermore, Garrison has not presented admissible evidence that similarly situated persons outside the protected class were treated differently. This too is grounds for granting Defendants' motion as to Garrison's race discrimination claim. *See, e.g.*, *Fields v. Shelter*

*Mut. Ins. Co.*, 520 F.3d 859, 864-65 (8th Cir. 2008); *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). While Garrison alleged disparate treatment of African American co-workers in his Amended Complaint,[5] such conclusory statements are insufficient to meet one's burden at the summary judgment stage. *Anderson*, 477 U.S. at 256–57; *Heisler*, 339 F.3d at 628*; cf. Oniyai*, 684 F.3d at 716.

Thus, Garrison has failed to make the requisite prima facie showing under the *McDonnell Douglas* burden-shifting framework because he has not introduced competent evidence that he was, at the time of the allegedly discriminatory treatment, meeting job expectations or that similarly situated employees who were not African American were treated more favorably. Moreover, even if he could shift that burden to Defendants on the basis of his allegations alone, there is no evidence in the record from which a reasonable jury could conclude that Defendants' expressed reasons for suspending him and demoting him were pretextual. *See, e.g.*, (Craigie Aff. Exs. 4–21.) His failure to adduce evidence of pretext is also fatal to his claims. *See Oniyai*, 684 F.3d at 716. Consequently, the Court recommends that Defendants' motion for summary judgment be granted as to Garrison's race discrimination claim.

### b.    Hostile Work Environment

Garrison's hostile work environment claim is also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004).

> To establish a prima facie case on a hostile work environment sexual harassment claim, the Plaintiff must prove: (1) that [he] was a member of a

---

[5] *See, e.g.*, (Am. Compl. ¶¶ 15–19, 25–45, 47–48, 55, 57–65).

> protected group, (2) the occurrence of unwelcome harassment, (3) a causal
> nexus between the harassment and [his] membership in the protected group,
> (4) that the harassment affected a term, condition, or privilege of employment,
> and (5) that the employer knew or should have known of the harassment and
> failed to take prompt and effective remedial action.

*Id.* It is not entirely clear from Garrison's Amended Complaint what forms the basis of his

hostile work environment claim.[6] That said, even if the Court were to assume without

deciding that Garrison established elements one, two, four, and five, summary judgment

would nevertheless be appropriate for reasons similar to those described above in

connection with his race discrimination claim. Namely, Garrison has proffered no evidence

that there was a nexus between his alleged harassment and the fact that he is African

American. Furthermore, Garrison's failure to proffer evidence in rebuttal of Defendants'

stated nondiscriminatory purpose is equally detrimental to his hostile work environment

claim. *Cf. id.* Consequently, the Court recommends that Defendants motion be granted as

to Garrison's hostile work environment claim.

### c.    Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall deny to any person within its jurisdiction the equal protection of the laws, which is

---

[6] Garrison alleges that Craigie treated Garrison "as if he were incompetent, dishonest, lacked integrity," and accused him of using illegal drugs. *See* (Am. Compl. ¶ 50.) But Garrison has failed to submit competent evidence to substantiate any of these rather vague claims and the record contains little or no information about the specific context in which most of the alleged incidents occurred. That said, the Court does note that Garrison's allegations regarding Craigie's comments about his "drug use" are refuted by Craigie's sworn affidavit and exhibits attached thereto. She states that she was concerned that his admitted use of potent prescription drugs could interfere with his ability to function effectively based on his own statements regarding the side effects he was experiencing. *See, e.g.*, (Craigie Aff. ¶ 4; Craigie Aff. Ex. 3 [Doc. No. 136].)

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). In the employment context, the Eighth Circuit applies the same burden-shifting framework for claims of Equal Protection violations that it does for Title VII violations. *See Henry v. Hobbs*, 824 F.3d 735, 738–39 (8th Cir. 2016) (stating the *McDonnell Douglas* framework applies "to claims of employment discrimination under the Equal Protection Clause"). Thus, as with Garrison's race discrimination claim, his failure to adduce evidence sufficient to create a genuine issue of material fact as to whether he was meeting Defendants' legitimate job expectations, as to whether similarly situated non-African American employees were treated more favorably, and as to whether Defendants' expressed nondiscriminatory reasons for suspending and demoting him was merely pretext, is fatal to his Equal Protection claim. *See, e.g.*, *Henry*, 824 F.3d at 739; *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005). Consequently, the Court recommends that Defendants' motion be granted as to Garrison's Equal Protection claim.

### d.    Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to claims of retaliation in the employment context. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005). "Under this analysis, a plaintiff must first establish a prima facie case by showing that he or she: (1) engaged in statutorily protected activity; (2) he [or she] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (internal quotation marks omitted). Garrison's claim of retaliation is based solely on the steps taken by Defendants in

23

the wake of the settlement agreement—his reassignment from the Out-of-State team back to Minnesota, and the resulting reduction in pay attributable to the fact that he was no longer working outside the state. *See* (Am. Compl. ¶¶ 238, 346–50; *see also* Zieminski Aff. Ex. 17 at 2, ¶ 5 (stating that the reduction in salary "reflects the removal of the differential paid for the Washington D.C. area")).) Garrison's failure to submit evidence prevents him from meeting his burden here too, at least as to elements two and three.

The only basis for Garrison's retaliation claim is that Defendants performed their obligations under the settlement agreement and relocated Garrison to Minnesota. But meeting one's valid, negotiated contractual obligations is not a materially adverse employment action that can sustain a claim for retaliation. *See, e.g.*, *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1265–66 (10th Cir. 2007) ("Jencks may have been annoyed, frustrated or disappointed, but holding her to the terms of a fairly negotiated settlement agreement is not a harm."); *Oyewo v. Lahood*, No. 10 Civ. 5139, 2012 WL 996995, at *10 (S.D.N.Y. Mar. 26, 2012) ("Oyewo does not satisfy the retaliation exception to the exhaustion requirement by alleging retaliation in her complaint, because placing Oyewo in the Garden City facility was not a materially adverse action by the defendant; rather, it was a legitimate action to which Oyewo consented when she signed the 2003 settlement agreement.").

Perhaps more importantly, even if Defendants' actions could be considered an adverse employment action, Garrison's failure to provide any evidence of pretext in response to Defendants' proffered legitimate non-retaliatory reason prevents him from satisfying his secondary burden of demonstrating that Defendants' "[(1)] reason was

pretextual and (2) creates a reasonable inference that [Defendants] acted in retaliation."

*Logan*, 416 F.3d at 880 (internal quotation marks omitted).  That is, Garrison has failed to

meet his initial burden demonstrating a retaliatory act and his secondary burden showing

Defendants' proffered reasons were pretextual.  Consequently, Defendants' motion should

be granted as to Garrison's retaliation claim.  *See id.*

## III.    RECOMMENDATION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendants' Motion for Summary Judgment [Doc. No. 127] be

**GRANTED.**


Dated:  March 8, 2019                        s/ *Hildy Bowbeer*
                                             HILDY BOWBEER
                                             United States Magistrate Judge




## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).